UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SULEYMAN KARAKUS,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br>DIRECTOR OF ICE,<br>ATTORNEY GENERAL,<br><br>Respondents. | ) | No. 2:26-cv-00732-MPB-MJD |

**ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS**

Noncitizen Suleyman Karakus filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention by federal immigration officials. Dkt. 1. On November 6, 2026, the Court ordered Respondents to show cause why it should not grant his petition and order his immediate release. Dkt. 6.

The Court reviewed the parties' arguments and, on November 18, 2026, sought additional information from them to rule on Mr. Karakus's petition. Dkt. 13. The Court explained that Mr. Karakus's detention is governed by 8 U.S.C. § 1231, which provides authority to detain three categories of noncitizens with a final order of removal. *Id.* at 3–4. Two of those categories do not apply to Mr. Karakus—he has not been found inadmissible under section of 8 U.S.C. § 1182; and he was not determined to be removable under 8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4). *Id.*; *see* 8 U.S.C. § 1231(a)(6). That means Mr. Karakus may be detained only if "the Attorney General has determined Mr. Karakus presents 'a risk to the community or [is] unlikely to comply with the order of removal.'" *Id.* at 4 (quoting § 1231(a)(6)). Because the record contained insufficient evidence for the Court to determine whether the Attorney General had made that

determination, it ordered Respondents to provide additional information justifying Mr. Karakus's continued detention. *Id.* at 6.

Respondents and Petitioner have responded to the Court's order and provided additional information. Dkts. 14, 15. After considering these additional materials, the Court concludes that Mr. Karakus's detention is unlawful. The Court therefore **grants** the petition for a writ of habeas corpus and orders Respondents to release Mr. Karakus.

## I. Additional Information

### A. Respondents

Respondents first state that on October 15, 2026, Acting Deputy Field Office Director ("ADFOD") Jonathan Florentino performed a custody status review of Mr. Karakus pursuant to 8 C.F.R. § 241.4 to determine whether Mr. Karakus posed a flight risk if released. Dkt. 14, ¶ 2; dkt. 14-2, ¶¶ 8–9. ADFOD Florentino determined that Mr. Karakus's removal was "expected within the foreseeable future" and "that he was a flight risk because he was unlikely to comply with his order of removal." Dkt. 14-2, ¶ 10. ADFOD Florentino came to that conclusion because Mr. Karakus "spent nearly a year non-detained with a final order of removal and failed to make any application for travel to depart the United States in compliance with his removal order." *Id.*

Respondents additionally state, for the first time, that Mr. Karakus is properly detained under 8 U.S.C. § 1231(a)(1)(C). Dkt. 14, ¶ 3. Section 1231(a)(1)(C) allows for extension of the 90-day removal period under § 1231(a)(1)(A) and for continued detention of the noncitizen during that extended period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure." Respondents assert that after Mr. Karakus's removal order became final on July 14, 2025, "he knew he was subject to a final order of removal for almost a year before he was re-detained and he failed to make a timely application for travel to

comply with the removal order," despite being at risk for a civil monetary penalty. *Id.* (citing dkt. 11-1 at 24, 28).

Respondents cite 8 C.F.R. § 241.4(g), which provides that "the removal period is extended under section 241(a)(1)(C) of the Act [8 U.S.C. § 1231(a)(1)(C)] if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure." *Id.* (citing 8 C.F.R. § 241.4(g)(1)(ii)). Respondents then point to § 241.4(g)(4), which states that Immigration and Customs Enforcement ("ICE") "will not conduct a custody review under these procedures when [ICE] notifies the alien that it is ready to execute an order of removal." *Id.* They conclude that ICE did not need to "make a failure-to-comply determination and place Mr. Karakus in such status because, pursuant to 8 C.F.R. § 241.4(g)(4), ICE determined that his removal was expected within the foreseeable future." *Id.* (citing dkt. 11-1 at 35).

Finally, Respondents clarify that Mr. Karakus remains detained at the Clay County Jail and has not been removed from the country. *Id.*, ¶ 1. They provide an unredacted flight itinerary showing that he was scheduled for a departing flight to Turkey on either November 24 or 25, 2026. Dkt. 14-1 at 2–3.[1] Respondents state that Mr. Karakus "has been removed from the scheduled fight for later this month . . . because of this Court's order restricting movement outside of this judicial district." Dkt. 14, ¶ 4 (citing dkt. 6, ¶ 5). ADFOD Florentino likewise states that Mr. Karakus "has not been removed from the United States" because of the Court's November 6 order directing Respondents not to "remove Petitioner from the United States." Dkt. 14-2, ¶¶ 11–12.

[1] The unredacted itinerary that Respondents provided shows Mr. Karakus was scheduled to depart from Chicago O'Hare to Istanbul Airport on Flight TK6 (or THY6) at 8:15 p.m. on "Tuesday, 25[]Nov 2026." Dkt. 14-1 at 2. But November 25, 2026, is Wednesday; the preceding Tuesday is November 24. What's more, Flight TK6 appears to be a daily 8:15 p.m. flight from Chicago O'Hare to Istanbul Airport; this same flight is scheduled for Monday, November 23; Tuesday, November 24; and Wednesday, November 25, 2026. *See* https://www.flightaware.com/live/flight/THY6 (last visited Nov. 23, 2026). It is therefore unclear which flight Mr. Karakus was initially scheduled to be on.

**B. Petitioner**

Petitioner first counters Respondents' argument that Mr. Karakus is a flight risk because he did not seek travel documents in compliance with his final order of removal. Dkt. 15 at 1. Petitioner notes that Mr. Karakus filed an appeal in the Seventh Circuit Court of Appeals on November 21, 2025, which did not conclude until the Seventh Circuit entered judgment on October 30, 2026. *Id.* at 1–2; *see* dkt. 15-1 (Seventh Circuit docket sheet). Petitioner states that Mr. Karakus should not be considered a flight risk for "exercising his legal right to challenge the removal order in the Seventh Circuit." Dkt. 15 at 2.

Petitioner states that Mr. Karakus's actions between June 2025 and July 2026, while he was on bond and not detained, "show clearly that he is not a flight risk and will comply with any orders." *Id.* In support, Petitioner notes that Mr. Karakus provided ICE with his passport; attended all check-ins with his Intensive Supervision Appearance Program ("ISAP") while on bond; and complied with instructions to report to both an ISAP office and then to an ICE office, where he was taken into custody. *Id.* at 2–3. Petitioner explains that Mr. Karakus was in Arizona in May 2025 (when he was initially arrested before being released on bond) as part of his work as a commercial truck driver. *Id.* at 2. Petitioner provided an order confirmation showing he was scheduled to pick up cargo at the Marine Corps Air Base in Yuma, Arizona on May 16, 2025, before he was arrested. Dkt. 15-2.

Petitioner also notes that Respondents have not previously "alleged that Mr. Karakus is a flight risk." Dkt. 15 at 3. Instead, he was granted bond in June 2025, "which necessarily required the finding that he is not a flight risk or danger to the community." *Id.*; *see* dkt. 11-1 at 18. Nor was Mr. Karakus determined to be a flight risk in the paperwork cancelling his bond, *see* dkt. 11-1 at 32, or in ADFOD Florentino's October 2026 Decision to Continue Detention, *id.* at 35–36.

Petitioner asserts that Respondents' lack of prior determination that Mr. Karakus is a flight risk "serves as extremely persuasive evidence that he is *not* a flight risk," and there is no evidence that the Attorney General determined otherwise before Mr. Karakas was detained. Dkt. 15 at 3.

Petitioner next asserts that ADFOD Florentino does not have authority to determine that Mr. Karakus may be detained beyond the 90-day removal period. *Id.* at 3–4. Petitioner contends that only the Attorney General may make such a finding, and there is no evidence that he did. *Id.* at 4. Petitioner cites 8 C.F.R. § 241.4(c)(1), which allows the Attorney General to delegate the authority to make custody determinations under 8 U.S.C. § 1231(a)(6) to "the district director or the Director of the Detention and Removal Field Office having jurisdiction over the alien." *Id.* For any noncitizen that "the district director refers for further review after the removal period, or any alien who has not been released or removed by the expiration of the three-month period after the review, all further custody determinations will be made by the Executive Associate Commissioner." 8 C.F.R. § 241.4(g)(2). Petitioner argues that ADFOD Florentino does not hold any of the listed titles, and "Respondents have not alleged that any further delegation of authority has occurred." Dkt. 15 at 4. Petitioner concludes that "no one with the authority to determine that Mr. Karakus should be in custody has made any such determination." *Id.*

Finally, Petitioner maintains that Mr. Karakus's pending removal is not a viable basis to detain him under § 1231(a)(6). *Id.* at 5. Petitioner asserts that because there is no evidence that the Attorney General (or someone with the proper authority) has determined that Mr. Karakus "is a risk to the community or unlikely to comply with a removal order," his detention is unlawful. *Id.*

## II. Discussion

Respondents offer two bases for Mr. Karakus's detention—8 U.S.C. § 1231(a)(6), which Respondents previously argued, and 8 U.S.C. § 1231(a)(1)(C), raised for the first time in their additional information. The Court finds that neither of these statutes permits Mr. Karakus's detention.

**A. Section 1231(a)(6)**

Respondents assert that Mr. Karakus's detention is lawful under 8 U.S.C. § 1231(a)(6) based on ADFOD Florentino's October 15, 2026 determination that Mr. Karakus is a flight risk because he is unlikely to comply with his order of removal. There are several problems with this reasoning.

First, Respondents have not shown that ADFOD Florentino had the authority to make a custody determination under § 1231(a)(6). As Petitioner points out, 8 C.F.R. § 241.4(c)(1) allows the Attorney General to delegate the authority to make this determination to "the district director or the Director of the Detention and Removal Field Office having jurisdiction over the alien" or, for review beyond the 90-day removal window, to the Executive Associate Commissioner. ADFOD Florentino does not hold any of those titles.[2] He states that his title is Acting Deputy Field Office Director. Although a "district director" may include a "Field Office Director," 8 C.F.R. § 1.2, Respondents cite nothing in the regulations suggesting that an "*Acting Deputy* Director" may be designated statutory authorization the same as the *Director* of a Field Office. *See Padilla v. Perry*, --- F. Supp. 3d ----, No. 3:26CV725, 2026 WL 3538825, at *3 (E.D. Va. Nov. 17, 2026) (citing *M.S.L. v. Bostock*, No. 6:25-cv-01204, 2025 WL 2430267, at *9–10 (D. Or. Aug. 21, 2025)) (distinguishing a Field Office Director as used in 8 C.F.R. § 241.4 from a "*Deputy* Field Office Director") (emphasis in original). Nor have Respondents produced a delegation order or other evidence suggesting that ADFOD Florentino has the authority to make a custody determination under § 1231(a)(6).

Second, § 1231(a)(6) makes the Attorney General's determination that a noncitizen presents a risk to the community or of non-compliance "a pre-condition to [his] detention"; in other

[2] A different section of the regulations allows a district director or Field Office Director to "delegate the authority to conduct the custody review, develop recommendations, or render the custody or release decisions to those persons directly responsible for detention within his or her geographical areas of responsibility" to a "deputy district director" or "assistant director of the detention and removal resident office." 8 C.F.R. § 241.4(h)(5).

words, a noncitizen "*may* be detained once the Secretary of Homeland Security *has determined* [the noncitizen] is a danger or unlikely to comply." *Idowu v. Olson*, No. 26 CV 11558, 2026 WL 3217231, at *12 (N.D. Ill. Oct. 27, 2026) (emphasis in original). ADFOD Florentino states that he did not determine that Mr. Karakus was a flight risk until October 2026—three months *after* he was detained by ICE in July 2026. Respondents still have provided no evidence that the Attorney General made a similar custody determination *before* Mr. Karakus was detained.

Finally, even if ADFOD Florentino had the authority to make a custody determination under § 1231(a)(6) and had done so *before* Mr. Karakus was detained, Florentino states that he determined Mr. Karakus is a flight risk because he did not seek travel documents between June 2025 (when he was granted bond) and July 2026 (when he was taken into ICE custody). But as Petitioner points out, Mr. Karakus had a pending challenge to his removal order during that time. It was not until October 30, 2026, that the Seventh Circuit denied Mr. Karakus's appeal. Dkt. 15-1 at 4. Mr. Karakus did not even file his § 2241 petition until November 4, 2026, despite being in ICE custody as of July 13, 2026. This suggests Mr. Karkus was not attempting to flee or to evade ICE custody and instead was seeking every available legal recourse to contest his removal (and now his detention).

The regulation that ADFOD Florentino says he relied on to determine that Mr. Karakus is a flight risk lists several factors that "should be weighed in considering whether to recommend further detention or release of a detainee." 8 C.F.R. § 241.4(f). These include a detainee's disciplinary infractions while detained, criminal conduct and convictions, and any record of previous immigration violations or failures to appear for immigration proceedings. *Id.* § 241(f)(1)–(2), (6)–(7). Weighing against detention are a detainee's ties to the United States, "such as the number of close relatives residing here lawfully," and information suggesting that the detainee is likely to "[a]djust to life in a community." *Id.* § 241(f)(4)–(5), (8)(i). ADFOD Florentino does not

say which of these factors he considered in determining that Mr. Karakus posed a flight risk, and he cited none in the October 2026 Decision to Continue Detention. Dkt. 11-1 at 35–36. As the Court recounted in the previous order, there is no evidence that Mr. Karakus has a criminal record or failed to appear for immigration proceedings. Instead, the evidence shows his ties to the community, including that he is married and has three daughters, the youngest of whom is a U.S. citizen; letters of support from his in-laws, who are U.S. citizens; and records of his residence in Greenwood, Indiana, since at least 2017. Dkts. 1-2 through 1-7; dkt. 13 at 4–5. He also states in his addendum to his petition and additional information that he has no criminal history and has complied with all immigration appointments and hearings since 2015. Dkt. 1 at 10–11; dkt. 15 at 2–3.

Respondents' additional information does not demonstrate that the Attorney General determined that Mr. Karakus presents a risk to the community or of non-compliance with removal orders if released. For the reasons explained in the previous order and in this order, Respondents have not provided a valid basis to detain Mr. Karakus under § 1231(a)(6).

**B. Section 1231(a)(1)(C)**

Respondents alternatively contend, for the first time, that Mr. Karakus is properly detained under 8 U.S.C. § 1231(a)(1)(C) because he has "fail[ed] or refuse[d] to make timely application in good faith for travel or other documents necessary to the [his] departure." Dkt. 14, ¶ 3 (quoting § 1231(a)(1)(C)). Respondents asserted this same basis for Mr. Karakus's detention under § 1231(a)(6), contending that his failure to comply with removal orders supported ADFOD Florentino's determination that Mr. Karakus was a flight risk. For the reasons the Court discussed above, this argument fails. That Mr. Karakus lawfully challenged his removal order in the Seventh Circuit while he was not detained and on bond is not evidence that he is unlikely to comply with his order of removal.

Moreover, Respondents state that they received a temporary passport from Turkey for Mr. Karakus that is valid until December 1, 2026. Dkt. 14, ¶ 5; dkt. 14-1 at 4. Petitioner also stated that he provided his passport to ICE when he was detained. Dkt. 15 at 2. Respondents do not clarify what other travel documents he needed to seek to comply with § 1231(a)(1)(C). Nor is there evidence that Respondents provided Mr. Karakus a "Notice of Failure to Comply" with § 1231(a)(1)(C) as provided in 8 C.F.R. § 241.4(g)(1)(ii) and (g)(5). That Notice, which 8 C.F.R. § 241.4(g)(5)(ii) says ICE "will provide," should have included "the circumstances demonstrating his . . . failure to comply with the requirements of section 241(a)(1)(C) of the Act; and an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements." 8 C.F.R. § 241.4(g)(5)(ii). It is difficult to fault Mr. Karakus for not complying with § 1231(a)(1)(C) when Respondents failed to follow their own rules and tell Mr. Karakus how to comply with that statute.

Respondents do not address this and simply assert that "ICE need not make a failure-to-comply determination and place Mr. Karakus in such status because . . . his removal was expected within the foreseeable future." Dkt. 14, ¶ 3. But this statement undoes Respondents' § 1231(a)(1)(C) argument. ICE cannot use Mr. Karakus's failure to comply with his removal order as a basis to detain him when it has not first determined whether he is, in fact, complying with his removal order. *See Louis v. ERO El Paso Field Office*, --- F. Supp. 3d ----, No. EP-26-CV-01855-DCG, 2026 WL 3135891, at *6 (W.D. Tex. Oct. 20, 2026) ("[W]here the government does not properly follow the procedures required by 8 C.F.R. § 241.4(g)(5)(ii), Section 1231(a)(1)(C) doesn't authorize Petitioner's continued detention."). Nothing in the evidence or in Respondents' additional information allows the conclusion that Mr. Karakus's detention is valid under § 1231(a)(1)(C).

### C. Summary

Mr. Karakus does not fall within the three categories of 8 U.S.C. § 1231(a)(6), and Respondents have not provided evidence suggesting another valid basis for his continued detention. Noncitizens who do not fall into the three categories in § 1231(a)(6) and are not removed during the 90-day removal period "must be released, subject to conditions of supervision." *Goryaev v. Warden*, No. 3:26CV1020 DRL-SJF, 2026 WL 3320312, at *2 (N.D. Ind. Nov. 3, 2026) (citing 8 U.S.C. § 1231(a)(3)); *see also Gopaul v. Soto*, No. CV 26-13205 (ZNQ), 2026 WL 3371658, at *5 (D.N.J. Nov. 6, 2026) ("The statutory default for a noncitizen who is not removed within [the removal] period is supervision, not confinement. 8 U.S.C. § 1231(a)(3)."). Accordingly, the Court will **grant** Mr. Karakus's petition and order his immediate release subject to reasonable conditions of supervision. This grant of habeas relief does not reach the Government's decision to execute the removal order. Nor does it preclude Mr. Karakus from being detained under a different statutory authority based on materially changed circumstances.

Because the Court is granting Mr. Karakus's petition based on its determination that his detention is not authorized under § 1231(a)(6), it will not address his constitutional arguments or his challenges to his arrest or his order of supervision. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[C]onsistent with the principle of avoiding unnecessary constitutional decisionmaking, judges are to address the statutory defense before the constitutional.").

As a final note, Respondents state that Mr. Karakus is no longer on a flight to Turkey because of this Court's November 6 Order to Show Cause directing Respondents not to transfer Mr. Karakus outside this District while his petition remained pending. Dkt. 14, ¶ 4; dkt. 14-2, ¶¶ 11–12. Yet Respondents represented in their November 12 Return that Mr. Karakus "is tentatively scheduled for a flight departing the U.S. to Turkey later this month." Dkt. 11 at 3.

If Respondents had already removed Mr. Karakus from the flight to Turkey in response to the Court's November 6 show cause order, then they should have stated as much in their Return.

## III. Conclusion

For the reasons explained, the petition for a writ of habeas corpus, dkt. [1] is **GRANTED**. Respondents shall release Mr. Karakus from custody **no later than 48 hours after entry of this Order**, subject to reasonable conditions of supervision. Respondents shall file documentation **within 48 hours** showing that they have released Mr. Karakus.

Final Judgment shall issue separately.

**IT IS SO ORDERED.**

Dated: November 24, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel